Case, Chessie v. Krinos Good morning, and may it please the court. My name is Ariel Erbacher, and I represent Chessie Logistics Company, LLC, the plaintiff appellant in this case. Your Honors, the crux of this case are three railroad tracks that are part of an active rail line that were operated over by the Indiana Harbor Belt for decades, and that my client had to obtain authorization from the Surface Transportation Board in order to be able to acquire and operate. Those three tracks, Your Honors, have been rendered completely impassable to rail traffic as a result of the excavation and sewer installation activities of the defendants. Your Honor, those activities not only interfere with rail transportation, but they also violate the strong federal policy of maintaining assets in the rail network. Ms. Erbacher, can I ask you about our jurisdiction in this case? Absolutely. There were counterclaims, or one counterclaim by defendants? Yes, Your Honors. What did they seek? In the counterclaim, Your Honors, the defendants sought quiet title over the spur tracks in order to remove the clouds to their titles. They also sought ejectment of the railroad and the rail assets, and they sought declaratory judgment that my client did not have easement rights over those spur tracks. And what's the current status of those counterclaims? The defendants withdrew that counterclaim as they had indicated they would. With or without prejudice? Without prejudice. So that's a problem to our jurisdiction because we've held repeatedly both with plaintiff's claims that are dismissed without prejudice and specifically with counterclaims that are dismissed without prejudice that could come back again that a dismissal without prejudice effectively defeats finality. And if these cases weren't cited, you all agreed you had a final judgment, but I'm very skeptical about that. The cases I have in mind are India Breweries, 612 F. 3rd, 651 at pages 657 and 58, and a case called Itofca, I-T-O-F-C-A, 235 F. 3rd, 360. Now, it's not necessarily an insoluble problem if the defense is willing to say they're dismissing their counterclaims with prejudice, so they could not assert them again. But I'll ask them about that in a few minutes. Do you have any other reason to think we have appellate jurisdiction here? Well, Your Honors, the claim, especially with respect to the judgment that the judge had entered, was a final judgment against us in favor of the defendants. So while there is the possibility of the counterclaim coming back, with respect to... It's not the whole case, but I understand your position. May I? Well, we can have at least a hypothetical discussion about the merits, in case it turns out the defendants are willing to give up their counterclaims. Absolutely, Your Honor. So with respect to the Section 10903 issue, whether my client has an implied right to sue for the violation of the Interstate Commerce Commission Termination Act of 1995, which I will refer to as ICTA, my client's circumstances meet the canon test, specifically because there is that strong federal policy and that interest in maintaining the rail network and maintaining rail transportation. Ms. Zurbacher, a lot of that, of your position, seems to assume that any tort claims you might have would be preempted under state law. Is that right? Well, Your Honor, the way that the preemption analysis works is you, according to the Surface Transportation Board, and I'm thinking specifically of the Mark Lane case and the Jiao case that we cited to... These are the administrative body's decisions? Yes, Your Honor, and those are decisions where the Surface Transportation Board made clear the preemption analysis and how it would interpret preemption in those circumstances. In those circumstances, Your Honor, because our tort claims serve to promote interstate commerce, promote rail transportation, they would not be seen as unreasonably interfering with rail transportation. Because our torts were, the state law torts were trespass and negligence and they therefore do not automatically regulate rail transportation, our application of them is what becomes crucial. Let me try to raise my concern this way. I understand how Congress, who I worry about more than the Surface Transportation Board here, but I understand how they might be concerned about state courts resolving some sorts of property issues and torts against property, neighbors that try to block or tear up tracks and so on. I'm sorry, that if neighbors try to assert tort claims against the railroad, that that could wind up interfering with rail transportation and might be preempted, some of them. It's hard for me to see how claims a railroad asserts against its neighbors under state law would threaten to interfere with rail transportation. Correct, Your Honor, and for that reason it would not be, the preemption question wouldn't come to bear. Right, so why would you need a federal cause of action which, I mean, canon is good law for the statute that it interpreted, but the Supreme Court has moved way beyond canon in terms of finding implied rights of action and had moved way beyond by the time this statute was enacted. So it's very hard to find an implied right of action, particularly where state law is available. Well, Your Honor, the argument that we made was that because state law, laws such as trespass and negligence. Because what? Because state law does not adequately address the right that railroads are given under ICTA and that strong, which is supposed to promote that strong federal policy of keeping assets in the rail network. Why is it inadequate? Because, Your Honor, for example, when we look at the Mark Lane case, issues such as property ownership are, they're not inconsequential, but the real crux of the matter is whether those actions will interfere with interstate commerce. And under 10903, the right that my client has given is the right to not have its services disrupted and the right to not have assets removed arbitrarily from the rail network. And trespass doesn't necessarily address that issue. Why not? Why can't you just? A state court can grant ejectment. It can grant you damages. It can grant emergency injunctive relief. Why is that not sufficient? Because those issues, Your Honors, as we saw with our case, those issues predicate themselves usually on proving ownership, on proving whether there's an ownership right, which in instances where interstate commerce is interfered with tends to be secondary. Well, one of your arguments is that federal law required Krinos, as a neighbor of the railroad, to notify the railroad that it was going to be excavating? Well, that was, I think, our adjacent, the Illinois Adjacent Landowner Act, and that was with the Illinois Adjacent Landowner Excavation Protection Act. Oh, it's state rather than federal? Right, and that's with respect to our lead operating track, which my client owns in Fee Simple. So your concern is this excavation by Krinos could possibly harm the track, and therefore Krinos had to notify you? Isn't that one of your arguments? Exactly, Your Honors, because in the course of the excavation and sewer installation activities, what happened was that the ballasts underlining the tracks were ruined. Was what? The ballasts that are meant to support the tracks were ruined. Was ruined, you said? Yeah, they're completely contaminated to the point where they have to be replaced. And we discussed that in depth, in detail, in our expert report. And also with respect to some of the construction activities that occurred, a lot of rail was damaged. It was bent to the point where it has to be replaced, and it accelerated the damage to the tracks as opposed to just normal wear and tear. So that's the reason why they needed to inform us, because their activities impacted the integrity of the tracks, all three of them. Can I ask you about the different tracks here? Absolutely. Because there's another statute here, 10906, that says, among other things, the board does not have authority over construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team switching, or side tracks. Does that apply to any of these tracks? So, Your Honor, we do have two spur tracks at issue. Out of the three? Out of the three. So we've got lead and two spurs, is that? Yes, Your Honor. Did I think about that right? But Port City Properties, Your Honors, which we had also cited too, and I believe an appellant's reply brief states, Sorry, which one? Port City Properties. Ah, okay. That case specifically, in that case, the court discussed how even though the Surface Transportation Board may not jurisdiction, and as such, the same policy interest with respect to maintaining the rail network applies. So who does have authority? The railroad. And the court in that instance specifically stated that it's up to the discretion of rail management with respect to the entry and exit. Sorry, what courts have jurisdiction? Oh, I apologize. Or authority? So the district court, so the federal court does have authority to hear these cases as a result of concurrent jurisdiction. But, again, with Port City Properties, even without having the explicit authority to regulate spur tracks, those spur tracks are still under the exclusive jurisdiction and authority of ICTA and the Surface Transportation Board. So we distinguish between jurisdiction and authority. Yes. That's the interpretation? Yes, Your Honor. Okay. What court was Port City Properties? Your brief doesn't say. If you don't mind, I'd like to grab my brief and I can look at that. The brief doesn't tell you. Never mind. Maybe you can tell us the rebuttal. I apologize. Okay. One other thing I wanted to ask you about, in your reply brief at page 14, you say that you did raise the issue of the negligence per se theory before your response to the motion for summary judgment. Please tell us when and where you did that. So, Your Honor, our argument was that we raised, was that we had provided enough allegations in our pleadings of negligence to provide notice of the negligence per se issue. Now, with respect to the specific Illinois Adjacent Landowner Excavation Protection Act, mentioning that specifically, we didn't mention that the defendants had violated it specifically. We did mention that it applied, though, in our expert report. Okay. And when was that disclosed in connection with the summary judgment motion? So our expert report was disclosed during expert discovery prior to the summary judgment motions, and we had discussed the defendants had had the opportunity to depose our expert on that question. Do we have a copy of that available to us? Of the expert report? Yes. Yes, Your Honor. I believe it was included in our summary judgment motion. And the opposition, too. Okay. Okay. Okay. Thank you. If I may, Your Honor, I'd like to reserve the rest of my time. Sure. Thank you, Ms. Erbacher. Mr. Silverman? Good morning. May it please the Court. My name is Peter Silverman. I'm here on behalf of the defendants, the Krinos parties. To address your point, Your Honor, we do not have a problem with dismissal of the counterclaims with prejudice. I was unaware that that would affect the jurisdiction of this court, and the counterclaims were predicated on the issue of whether there's a viable easement, which the district court decided against the plaintiff. And accordingly, the counterclaims were dismissed. So you think the relief that the rejection of the plaintiff's case is good enough for you, for your purpose? Yes. And we made that clear to the district court, in connection with summary judgment, that we were not intending to pursue the counterclaims if the easement issue was decided in our favor. And so we intended to dismiss them. There was a pending issue as to cost, so we didn't want to dismiss it with prejudice at the time. And looking back on it, we perhaps should have then. But we have no problem deeming them if it's possible. So just to be clear, this is an unequivocal statement that you are dismissing your counterclaims with prejudice? Yes, correct. Thank you. And thank you for that. Addressing first the issue of whether there's an implied cause of action under the ICC Termination Act. The particular provision that is cited by Chessie, this 10906, does not have rights creating language. They don't argue that it does. I think this is about 10903, right? Pardon me. I wrote it down wrong. I was asking about six. That's the spur track. That's right. And then the other critical issue under the Sandoval test is whether there's a remedy. And there is an extensive enforcement regime under this statute in Chapters 117 and 119. And Chessie does not argue. In fact, they concede that none of the remedies apply to their claim. It does not create a cause of action against a neighboring landowner. There's extensive enforcement authority and remedies against a rail carrier. There's nothing that even remotely suggests that Congress intended to create a cause of action against anyone other than a rail owner. What about a firm that causes damage to the tracks? Well, in this case, there is an allegation that that's what occurred, that we caused damage to the tracks. Factually, what was stated that these tracks were impassable is not even close to being correct. And they're also not used. So you say no damage to the track? There's no damage. There's no damage. And that's one of our arguments. When they bought these tracks for $2,000, it's a mile of tracks. This is Chessie, the plaintiff. It's under a mile or a little over a mile of tracks. They were once used to service an industrial park. They are no longer used. They have not been used. They have no customers. And they readily admit that. So what do they use the tracks for? They don't use them. They don't use them at all. My understanding is that they get some money from a utility because they have some easement that draws some electrical line on there, and there's some money paid. But otherwise, these tracks are absolutely dormant, and it's clear from the testimony. And their expert testified that if they had a customer, theoretically, that they could still operate the tracks as to that theoretical customer. And that is a clear admission. Admission of what? That the opening comment made by Chessie's lawyer was that these are impassable tracks. They can't be utilized. We interfered with railroad operations, and it's just not accurate factually. But theoretically, if we had, as counsel admits, they would have recourse under state law. And there is no preemption here under the very restrictive provision that limits preemption to the remedies in the statute that relate to regulation. But now, suppose they started running car trains over these tracks. Then no. Then they would have a good claim against you, against Krinos, if Krinos is making it difficult to run trains because of its excavation activities? Well, they were not excavation activities. This is a hypothetical question. Yes. If we were excavating it,  they would have a claim against us. And they did have a claim, and they asserted it. And if they had prevailed, they would have been compensated. But of course, if you damage the tracks, then they can't run anything on it. Well, they have an obligation relative to this surface transportation board to keep the tracks operational. If they're damaged, they then have... You mean if they're damaged by you, they, Chessie, bears all the expense of repairing? No. If they have a claim, they would have recourse against us. In this case, they sought $680,000 for these tracks that they bought for $2,000. If they had prevailed, and we would have had to pay them $680,000, they would have presumably taken the money and fixed the tracks. And that would have worked perfectly for them, but they did not prevail because their claims were not well-based. They lost, and then focused on this private cause of action under this statute. But they're unable to provide any rights-creating language or any intent by Congress, anything in the statute, that would suggest an intention to provide a private cause of action. The issue with the excavation, if I may, there's... I believe that the issue there is whether there's notice to us, fair notice to us of this claim. There's nothing in the complaint that... I thought it was you who had to notify them that you were going to excavate next to the tracks. Under the statute, if we were excavating below a certain depth, we have to give them notice, and we have an obligation to maintain what's called lateral support. The notice that I'm talking about is notice as a defendant from the plaintiff that that's something that they're asserting. So there's nothing in the complaint. Okay. There doesn't have to be in the complaint. And I was going to say, I recognize that. I can see that that's not a... Tell us when you think they were obliged to disclose. Well, Your Honor, we finished discovery, and we get into summary judgment. And on summary judgment, we move against their negligence count. On the negligence count, they were claiming that there was trespass, that we or our agents went onto their property. They actually, in the summary judgment briefing, said that their negligence claim was solely predicated on this trespass. But then they mentioned this statute. It was the first time we heard anything about this statute. There's no mention of excavation in the complaint. There's no mention of digging in the complaint. It's the opposite. The contention is that we increased the elevation, that we put dirt on top of the tracks. We had no reason to believe that they were contending that we were excavating. And there's nothing in the record to suggest that we were. We didn't dig down. We weren't alleged to dig down. We were alleged to have increased the elevation to help with drainage, on our own property, primarily. And a small amount of this dirt, allegedly, was on their tracks. And again, had no impact on... Well, I thought the excavation was the dumping the dirt on the tracks. We had to get the dirt from somewhere, right? So, presumably, the dirt was on your property, and you pushed it onto the tracks. Well, there's no evidence to support that, Judge. I believe that it was brought in. Well, where did the dirt come from? I believe that it was brought in on a truck, and that's my understanding, but it's not... Wasn't there some evidence of an excavation of a trench to put a sewer in on your property? I don't believe excavation is a term that's used in any way at all that I know of, but I know that... Okay. Was there a sewer installed as part of your project? There was a sewer, but it was raised. It was above... I must admit I don't know the specifics of the engineering, but as I understand it, there was a sewer, and then there was drainage going down to our building, and so they were elevating around it. That's my understanding, but I candidly do not know... Elevating around it? What does that mean? Well, the water was flowing down to the building, and so they were trying to prevent that, so they were trying to redirect the water... Redirect the drainage. Drainage, to redirect it. What was elevated? Why? What was elevated? The ground. The ground. Around. The ground was elevated, the ground was rising. Magical. I've never heard of an elevated sewer, but... I must say I don't know much about sewers, and I must say I don't know how they did it exactly, but I do know that in the complaint, there's no mention, suggestion, even remotely, that we excavated. Okay. What about the plaintiff's argument that their expert report disclosed this negligence per se claim? And, Judge, as far as I know, that was not argued before right then, so I cannot... We were just talking about that. I don't recall it being in there. I did take the deposition of the expert, and I did not ask him about excavation. I don't recall it being, but I would submit to the extent that that's an argument they're making now that they've waived it. If they had raised it in a brief or raised it below, I would have had a fair opportunity to look at it. I don't know. I do know that it was not something that registered with us where we addressed it. We didn't take any discovery. We have the threshold issue there was no notice, but secondarily that there's no evidence of excavation in the case. And while there's no definition of excavation in this statute, it does talk about depth. So it clearly is going down, and it talks about... Excavation usually means going down. I know that much. That's about it. But that's the full extent of how excavation is mentioned in the statute. Your position is you build up, you didn't go down. We went up. We didn't go down. I don't understand. Go up without going down. The earth, the dirt you used, you got from digging it up. But it has to be digging. It would have to be digging on our property. Well, whose property are you digging on? There's nothing in the record to suggest we're digging on our own property to put dirt. I mean, this is a lot of dirt. This is not just a little bit of dirt. They're contending that there's, I don't know, 80 cubic yards of dirt. There's no suggestion we just took it from one part of the property and brought it over to the other. So there's nothing in the record to suggest that we're digging there. So you didn't do any digging. You just had trucks bringing in truckloads of dirt. Is that what you're saying? I do not believe there's anything in the record that talks about digging on our property. My understanding, but it's not in the record, is that the dirt was brought in. But the point to us is that we had no expectation that this was a claim in the case, as the district court found. I would say, lastly, on this point, in terms of the standard of review, the setting was that on summary judgment they raised this claim, and there are cases and authority for the proposition that it really is akin to the denial of a motion for leave to amend your complaint, that they were trying to add a new claim. The court denied it, and that that should be reviewed on an abuse of discretion standard. We believe under that standard or a de novo standard that the claim was simply not raised sufficiently to put us on fair notice, as found by the district court. Okay. Thank you very much. Yes, well, thank you, Mr. Silverman. I urge you to affirm. Thank you. So, Ms. Zuerbacher, do you have anything further? I just wanted to start with Port City Properties was the 10th circuit. I apologize for that. 10th? Okay. Thanks. And I also wanted to reinforce that these are active tracks. Nowhere in the record did my client make any statements that they didn't use them, that they weren't going to use them in the future, or that they weren't integral to their real operation. When's the last time a train ran over them? The last time we served customers that we had the demand to ship freight was in, I want to say, 2013. But, Your Honors, as we stated in our brief and in our reply brief, these three tracks form the sole yard facilities in this park that my client can use. I'm sorry. Could you say that again? They form the sole yard facilities for rail operations that my client can use. Did you say sole, guard, guard? The only yard, I apologize. We're not familiar with railroad language. I apologize. But these are the only facilities that my client can use in any way to either manipulate cars or to address larger volume. Rail operations are on demand, and my client currently is hampered in its ability to meet any kind of demand. And these tracks cannot be operated over as they stand. These three tracks specifically cannot be operated over because of that landfill, because of the sewer. And my client can't fix that without daylighting, without destroying the sewer that was not there previously and was installed. Do we know, do you know where the soil came from? No, Your Honors. That didn't come out in discovery. So what's the evidence of excavation? The evidence of excavation is that we saw that the defendants had, or that we had seen that the defendants had started installing a sewer along the side of the track. Above ground or below ground? I believe that they had started, I would have to review that statement again, but I believe it wasn't made clear. It was just that they had started putting tiles and sewer equipment next to the spur track, between their building and the spur track. So they're drain tiles you're talking about? I'm sorry? Drain tiles you're talking about? Right, and then that was part of the sewer installation, because the sewer that's there wasn't there previously. Well, most sewers have a drain tile. Are sewers ever above ground? No, I would hope not. That's strange. Well, there's storm and sanitary, right? Right. Oh, and it looks like that's my time, Your Honors, but we urge that you reverse. Okay, well, thank you very much, Sir Barker and Mr. Silverman. We'll move to our third question.